UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>DAVID ALLEN HEDGES,  )<br>  )<br>Defendant.  )<br>  )<br>  )<br>  ) | NO. 3:15-CR-3-GFVT-MAS |

**REPORT & RECOMMENDATION**

The Court, on referral from the District Court, considers reported violations of supervised release conditions by Defendant David Allen Hedges. Upon consideration of the violation report, the hearing testimony, and the parties' arguments regarding an appropriate sentence, the Court recommends that the District Court revoke Hedges' supervised release and sentence him to twenty-four months' imprisonment with no supervision to follow.

I.   **CASE BACKGROUND**

On April 12, 2017, United States District Judge Gregory F. Van Tatenhove sentenced Hedges to a 45-month term of imprisonment followed by a 3-year term of supervised release upon his plea of guilty to the charges of attempt and conspiracy to commit mail fraud and aiding and abetting fraud with identification documents. [DE 312]. Prior to his incarceration for the identity theft and fraud, Hedges pleaded guilty to state trafficking charges in 2010 and was sentenced to two five-year terms of incarceration to be served concurrently. Hedges was paroled on March 14, 2012, after two years of incarceration. He admitted that he engaged in the activities leading to the

conviction in this case in July 2012, just four months after he was released on parole. Hedges then committed another controlled substance offense in September 2014 (while still on parole for the trafficking conviction) and went back to prison for another year for that offense. His term of incarceration for those offenses ended on June 1, 2015; however, he was indicted in the instant federal fraud case prior to his release. As a result of the 2010 and 2014 state convictions, the 2017 federal conviction in this case, and the 2019 state conviction and 2019 federal supervised release revocation in this case, Hedges has spent the vast majority of the past twelve years incarcerated.

## II. SUPERVISED RELEASE HISTORY

Hedges' original term of supervision began on February 15, 2019. On March 19, 2019, the United States Probation Office ("USPO") issued a Supervised Release Violation Report charging Hedges with violations of the conditions of his supervised release. Specifically, USPO reported that on March 14, 2019, the probation officer attempted to make an unannounced home visit at Hedges' residence. The probation officer spoke with the owner of the residence who informed him that Hedges was no longer living there. The violation report further stated that Hedges had not reported to USPO in February following his release from federal custody, had made no effort to obtain employment, or made any payments towards his restitution as required. Judge Van Tatenhove issued an order for an arrest warrant based on these violations on March 20, 2019.

Law enforcement did not locate Hedges for more than a month. On July 3, 2019, USPO submitted an addendum to the violation report explaining that on April 28, 2019, the Frankfort police responded to a call that involved Hedges. Upon realizing Hedges had an active state warrant (for a parole violation unrelated to the warrant issued by Judge Van Tatenhove), the officers arrested and searched Hedges, whereupon they found four bags of methamphetamine. Hedges ultimately pleaded guilty in Franklin County Circuit Court on May 14, 2019, to a Class A

misdemeanor for attempted drug trafficking. Hedges' criminal conviction and prior noncompliance with his probation reporting requirements constituted a Grade C violation. Hedges stipulated to the violations; Judge Van Tatenhove sentenced Hedges to ten months' imprisonment with two years' of supervised release to follow. [DE 369].

### III.    THE INSTANT VIOLATIONS

Hedges began his second term of supervision on November 9, 2020. According to the December 9, 2020, Supervised Release Violation Report ("December 2020 Report"), USPO attempted to contact Hedges on November 23, 2020, December 1, 2020, and December 2, 2020, and was unsuccessful. USPO left a message with Hedges' mother at her residence (where he was living) that he should report to the USPO office on December 3, 2020. Hedges did not report to the USPO office and made no further contact with his officer. The December 2020 report thus listed two violations: (1) failing to allow the probation officer to visit; and (2) failing to report to the probation office to file his November 2020 monthly probation report.

On March 29, 2022, USPO submitted an addendum to the December 2020 Report ("March 2022 Addendum"). The March 2022 Addendum added Violations 3 and 4 to the December 2020 Report, both of which were violations of the mandatory condition that Hedges not commit another federal, state, or local crime. Violation 3 alleged Hedges incurred state court charges out of Anderson County, Kentucky, on April 1, 2021, when a sheriff's deputy and United States Deputy Marshals observed Hedges place a firearm on a table outside his residence and flee the area as he saw them approach. Though the deputies could not locate Hedges, they searched the residence and found a handgun with a forty round extended magazine (Hedges is, of course, a convicted felon prohibited from possessing a firearm), drug paraphernalia, and a small bag containing suspected methamphetamine. Violation 4 alleged Hedges has been charged with flagrant non-support in Kentucky state court.

Hedges entered an intelligent, knowing, and voluntary stipulation to Violations 1, 2, and 4 at his final hearing on April 5, 2022. Thus, Court found that the United States established those violations by a preponderance of the evidence pursuant to 18 U.S.C. § 3583(e).

A. **THE CONTESTED VIOLATION**

At the final hearing, Hedges contested the third violation that arose out of the Anderson County, Kentucky, charges for felon in possession, possession of drug paraphernalia, possession of a controlled substance, and fleeing or evading police. The burden was on the United States to prove by a preponderance of the evidence that Hedges violated the terms of his supervision. The United States introduced the testimony of United States Deputy Marshal Eric Elliott and proffer. Hedges offered proffer to rebut Deputy Elliott's testimony.

Deputy Elliott testified that he and three sheriff's deputies went to a property in Anderson County, Kentucky, to search for Hedges on April 1, 2021. The property consisted of a house and two trailers behind the house. USMS had information that Hedges was residing in one of the trailers behind the house. Deputy Elliott stated that law enforcement saw an individual step outside the residence and place something on a table. The individual retreated into the trailer and then exited out the back door and ran into the woods to a marked trail. The marked trail had a camera that law enforcement later reviewed and confirmed the identity as that of Hedges. Law enforcement on the scene also searched the trailer on that same day, where they located a firearm on the table outside the front door as well as methamphetamine and drug paraphernalia.

Hedges, however, disclaimed any knowledge of the events of April 1, 2021. On cross-examination, Deputy Elliott acknowledged the property and trailer where Hedges was allegedly located was not owned or rented by Hedges, and there was little connecting Hedges personally to the property. Hedges vaguely argued that the identification of him from the trail camera was inaccurate, but did not provide any specificity to support his argument.

4

The Court ruled on the record, finding that the testimony from Deputy Elliott established by a preponderance of the evidence, at a minimum, that the United States established Hedges committed the state law violations of fleeing and evading law enforcement as well as possession of a firearm by a convicted felon.

## IV.    ANALYSIS

The Court has evaluated the entire record and considered the arguments presented at the final hearing, the record concerning Hedges' violations, the presentence investigation report, and the factors set forth in 18 U.S.C. § 3583(e).

Hedges' first and second violations are Grade C violations, while his third and fourth are Grade B violations. Accordingly, a Grade B Violation will be utilized for purposes of this proceeding. U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."). The criminal history category established at sentencing is a Category V. The parties agree that the Guidelines propose a sentence of 18 to 24 months, and that the Court could re-impose a term of up to 26 months of supervision, less any term of imprisonment imposed upon revocation.

In recommending a sentence, the Court must consider the nature and circumstances of Hedges' original conviction, the statutory factors in 18 U.S.C. § 3553 incorporated into § 3583(e), and the Sentencing Guidelines range. *See also United States v. Johnson*, 640 F.3d 195 (6th Cir. 2011). Hedges' original conviction involved a conspiracy to commit mail and wire fraud and aiding and abetting aggravated identity theft. [DE 107]. Hedges admitted he was responsible for an intended loss of $43,244 as a result of his role in the conspiracy.

The District Court originally imposed a 48-month term of imprisonment followed by a three-year term of supervised release. [DE 312]. This was at the lowest end of the guideline range

5

of 24 to 30 months on the fraud charge and 24 months on identity theft charge, to be served consecutively. In June 2020, the Guideline range for his violation was 7 to 13 months and the District Court imposed a revocation sentence of 10 months incarceration with two years' supervision to follow.

Considering the factors set forth in 18 U.S.C. § 3553, it is clear to the Court that revocation is necessary to "protect the public from further crimes of the defendant," as Hedges has been incarcerated or involved in criminal activity continuously for the past twelve years. 18 U.S.C. § 3553(a)(2)(C). Since his teenage years Hedges has engaged in criminal activity ranging from repeatedly driving without a license, driving under the influence, assault, cruelty to animals, and controlled substances offenses. Hedges' history and characteristics indicate that he has an escalating criminal history and difficulty conforming his behavior to be within the bounds of the law. [*See* Presentence Investigation Report at 14-17]. Most importantly, this is Hedges' second violation in which he absconded from supervision for a long period of time. Hedges was only a few weeks into his second term of supervision when he absconded in November 2020, and he was not located for more than a year.

The Court seeks to craft a punishment that will reprimand Hedges' misconduct, protect the public, and (hopefully) motivate behavioral change, but not set him up for additional failures on supervised release. 18 U.S.C. § 3553(b) ("to afford adequate deterrence to criminal conduct"). Hedges' two brief stints on supervision evince an inability or unwillingness to conform his behavior to align with his conditions of supervision. In short, Hedges behavior indicates a complete hostility towards any former of supervision. The Court believes both Hedges and society will benefit more from Hedges serving a longer term of incarceration with no supervision to follow than being placed on another term of supervised release.

Hedges urged the Court to consider his difficult childhood, lack of opportunities for rehabilitation, and substance use. The Court is sympathetic to Hedges' background and struggles with substance use and acknowledges that these issues may contribute to his difficulty with supervision. Nonetheless, supervised release will be of no rehabilitative utility to Hedges if he refuses to participate in supervision generally, much less substance use or mental health treatment. The Court can neither help Hedges nor protect the public from his continued criminal activity (including, in this case, possessing a firearm as a prohibited person) when his whereabouts are unknown. After his first revocation, Hedges could have seized the opportunity to reintegrate into society, seek employment, and obtain the mental health and/or substance use treatment he may have needed. Instead, Hedges chose to abscond and engage in criminal activity, including fleeing law enforcement. The Court is unconvinced that another term of supervision will be successful or serve any of the purposes listed in § 3553 as incorporated in § 3583.

Considering all of the facts, the Court recommends the District Court revoke Hedges' term of supervision and sentence him to the highest end of the Guidelines range, twenty-four months. This sentence will punish Hedges for his continued disregard for the rule of law. The Court hopes this will deter Hedges from committing future offenses. The Court further recommends that the District Court refrain from imposing a period for supervised release to follow. Hedges already served a 48-month term of imprisonment for his original offense and a 10-month term for his first supervised release violation, in addition to any term of incarceration the District Court may impose on the instant revocation matter. As discussed, additional supervision will likely serve no rehabilitative purpose in this case and may result in Hedges becoming stuck in a cycle of repeated revocation and prison sentences. See 18 U.S.C. § 3553(a)(6) ("The court, in determining the particular sentence to be imposed, shall consider—[. . .] (6) the need to avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar conduct[.]"). The Court finds this sentence is sufficient but not greater than necessary to punish and deter Hedges' conduct in violating his supervised release.

## V. CONCLUSION

Accordingly, for the reasons stated herein, the Court **RECOMMENDS**:

(1) Hedges be found guilty of all violations;

(2) Hedges' supervised release be **REVOKED**;

(3) Twenty-four (24) months of incarceration; and

(4) No supervision to follow.

Hedges preserved his right of allocution. Absent a waiver of allocution, this matter will be placed on Judge Van Tatenhove's docket for an allocution hearing upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within 14 days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Entered this 26th day of April, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge